**Huey DeVILLE, Appellant,**

**v.**

**SHELL OIL COMPANY, a corporation,**
**Appellee.**

**No. 20563.**

United States Court of Appeals
Ninth Circuit.

Sept. 16, 1966.

**124**

James K. Tallman, Anchorage, Alaska, for appellant.

David H. Thorsness, Hughes, Thorsness & Lowe, Anchorage, Alaska, for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a final decision of the United States District Court for the District of Alaska, granting defendant's motion for summary judgment. The district court had jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1291.

On April 24, 1964, defendant-appellee Shell Oil Co. (herein referred to as "Shell") entered into a contract with the Kaiser Steel Corporation (herein referred to as "Kaiser") under which Kaiser was to construct an offshore drilling platform for Shell to be used in Cook Inlet near Kenai, Alaska. The work was to be performed by Kaiser employees, but inspectors from Shell made frequent inspections to be sure that the work met the specifications of the contract.

Plaintiff-appellant Huey DeVille was a welder employed by Kaiser to fabricate large metal tanks to be placed on the offshore drilling platform. Late on November 13, 1964, appellant was working inside the last of the ten tanks when Shell inspector John J. Smith inspected the tank and determined that some metal braces supporting the walls of the tank would have to be removed, and then re-welded. The views of the parties conflict as to whether Smith instructed appellant to remove the braces and reweld them, or whether appellant removed the braces without instructions to do so when he learned what the inspector wanted done, or whether inspector Smith notified the Kaiser foreman, James Ouzts, that the braces should be removed and Ouzts ordered their removal. Whoever gave the order or made the decision that the braces should be removed, the fact is that the braces were removed. On the following day, November 14, 1964, in the absence of any representative of Shell, and without notice to it, foreman Ouzts ordered a heavy metal top or lid to be placed on the tank from which the braces had been removed. Because the walls of the tank were no longer properly supported after the removal of the braces, the walls of the tank buckled and the top tilted into the tank seriously injuring appellant who was working therein. Appellant applied for and received workmen's compensation payments as a result of the injuries.

On January 13, 1965, appellant filed suit against Shell on grounds of negligence. Appellee moved for summary judgment on the ground that appellant's employer, Kaiser, was an independent contractor and appellee had no duty to appellant and no control over the actions of the independent contractor. The district court agreed with appellee and granted summary judgment on September 10, 1965. Appellant moved for relief from the summary judgment on the ground that the depositions taken prior to the motion for summary judgment created genuine issues of material fact as to whether the appellee assumed such control over the job as to assume a duty of care towards appellant which it subsequently breached. The motion for relief from the summary judgment was also

---

1. Although the parties agreed that diversity of citizenship existed, it does not appear from the record what the citizenship of defendant-appellee was. Plaintiff-appel-
lant was a citizen of Alaska and defendant-appellee of some state other than Alaska.

supported by the affidavit of appellant. The district court denied appellant's motion for relief from the summary judgment on October 9, 1965, and this appeal followed.

## I. Scope of this Appeal.

■ A preliminary question which must be considered before passing to the merits of the summary judgment concerns appellant's motion to the trial court for relief from the summary judgment, and the supporting affidavit which he filed along with that motion. Appellant argues in his brief that this supporting affidavit, as well as his deposition taken before the motion for summary judgment was made by appellee, should be considered by this court in determining whether or not there were contested issues of material fact in the case.

After checking the record (C.T. p. 31) we agree with appellee that appellant's notice of appeal does not include an appeal from the order of the district court denying relief from the summary judgment.[2] The affidavit in support of that motion for relief is not before this court, and cannot be considered by us in determining whether or not material issues of fact were contested in the proceeding below. We note that appellant made no effort to bring before us, or designate as part of the record on appeal, the motion for relief from summary judgment, the order of the district court denying the relief requested, nor the affidavit in support of the motion for relief. It is thus impossible for this court to consider the allegations contained in that affidavit. We decline to consider as evidence appellant's representations in his brief as to what the affidavit contained.

## II. Was there Genuine Issues of Material Fact?

Appellee moved for and was awarded summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. Rule 56, subsection (c), provides in pertinent part that "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" (Emphasis added.) In its memorandum in support of its motion for summary judgment, and again on this appeal, appellee attempts to show that it was entitled to judgment as a matter of law, and that the law is so clearly in its favor that appellant cannot escape summary judgment merely by alleging facts which even if proven would not provide appellant with a right to recover.

■ Alaska follows the general rule that the employer of an independent contractor is not responsible for the negligence of the contractor. Matanuska Electric Association, Inc. v. Johnson, Alaska, 386 P.2d 698 (1963). However, there are some well recognized exceptions to this rule, including the exception here pertinent that if the employer retains supervision or control over the work of the independent contractor the employer will be responsible for harm resulting from its own negligent supervision or control. Kirk v. United States, 270 F.2d 110 (9th Cir. 1959); Spinozzi, Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., Intervenor v. E. J. Lavino and Company, 243 F.2d 80 (3rd Cir. 1957); Dushon v. United States, 243 F.2d 451, 17 Alaska 245 (9th Cir. 1957). A problem arises as to how much "control" must be retained by the employer in order to make him liable. Kirk v. United States, supra, states the generally accepted rule that retention by the employer of the right to inspect construction work to see that provisions of the contract are being carried out does not, of itself, make the employer liable to employees of the independent contractor. But, as stated in rather general terms in

---

**2.** It was agreed on oral argument that the notice of appeal was filed two days after the motion to reconsider was filed, and eleven days before the motion to reconsider was ruled upon. We need not here pass upon the jurisdiction of the district court to rule on the motion to reconsider.

Spinozzi, etc. v. E. J. Lavino and Company, supra, the employer is liable where the harm to the independent contractor's employee results from the control retained by the employer: "[I]t is apparent that where the employer has retained some element of control of the job, he should be responsible for the harmful consequences of its performance as a concomitant of the control retained." (243 F.2d at 82.)

■ In the circumstances of this case, had the employer Shell Oil Company assumed such control or supervision of the work of the independent contractor that it could be held liable for harm resulting from the control which it exercised? The deposition of appellant Huey DeVille states that the Shell inspector had stated only that the situation had to be corrected; that the Kaiser employee told plaintiff how and when the work was to be done. (Deposition, p. 10, line 6 to p. 11, line 13; p. 12, line 8 to p. 15, line 24.)

The statements in the DeVille deposition do not describe an assertion of control of the job by Shell which is sufficient, under the case law, to preclude a summary judgment.[3]

It appears from appellant's own deposition that his Kaiser foreman knew that the braces had been removed, and yet ordered the top placed on the tank in order to release the rented crane which was needed for the job, and did this at a time the Shell inspector was absent.

Having found that appellant's testimony by deposition as to control of the job by Shell is legally insufficient to make Shell liable we conclude there existed no genuine issues as to material facts, under the requirements of Rule 56, and that no legal basis for holding Shell was proved, nor could it be inferred.

Because of this conclusion, there is no reason to consider other defenses raised by Shell.

The summary judgment is affirmed.

3. The affidavits of Ken Emard, appellant's fellow worker, and Jim Ouzts, appellant's foreman, controvert appellant's deposition as to where the orders to remove the braces came from, but on this review such testimony is of no consequence or materiality.